[L. A. No. 17773.   In Bank.—July 28, 1941.]

LOUIS P. RUSSILL, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Samuel S. Adler for Petitioner.

Norman A. Bailie, Claude Minard and Jonathan H. Rowell for Respondent.

THE COURT.—This is a proceeding to review the record in disciplinary proceedings initiated by the respondent

State Bar, pursuant to service on petitioner, an attorney at law, of a notice to show cause why he should not be disciplined for asserted professional' misconduct. The notice to show cause charged a violation of sections 6103 and 6106 of the Business and Professions Code, amounting to a breach of his duties as an attorney at law in having misappropriated funds belonging to his client, Mrs. Mary C. Stubbs. Petitioner answered, denying the charges, and at the close of the initial hearings before a local administrative committee two members found the charges to be supported and recommended that petitioner be given a private reprimand, the third member recommending that the charges be dismissed. At the hearing before the Board of Bar Governors additional evidence was received, whereupon the board adopted the findings of the local administrative committee and, three members dissenting therefrom, recommended that petitioner be suspended from the practice of the law for a period of six months.

The local committee found that petitioner had been employed by Mrs. Stubbs to secure the return to her of certain moneys which she had previously delivered in trust to one Mrs. Beha; that petitioner had secured a settlement of the claim and received a cashier's check in the sum of $273 payable to Mrs. Stubbs; that he had induced Mrs. Stubbs to endorse the check and she had thereupon delivered it to him with instructions to cash it and after deducting the sum of $30 (as the remainder of his fee) to deliver the balance to her; and that petitioner had misappropriated the full amount of the cashier's check and converted the same to his own use. The committee also found that while it was agreeable to Mrs. Stubbs that the money be deposited with one Augustus Alvarez, the money was not so deposited, petitioner having admitted that he deposited the money in his personal account and checked out against it for his own use, pursuant to an arrangement with Alvarez.

It may here be said that the evidence elicited before the local committee was conflicting in material respects. The two members who found the charges to be sustained conceded that the evidence was "somewhat unsatisfactory," while the dissenting member expressed the view that the evidence was conflicting and far from convincing, and "certainly not established by a preponderance." Mrs. Stubbs, the prosecuting witness, gave evidence before the local committee in support of the charges; but at the hearing before the Board of Bar

Governors there was admitted in evidence an affidavit sworn to by Mrs. Stubbs, the averments of which constituted a complete reversal of the evidence she had given before the local committee.

The record shows that long prior to the time petitioner became involved in the matters here concerned he had been a personal friend of and acted as attorney for Augustus Alvarez, a Los Angeles mortician. A working agreement existed between the two, whereby petitioner handled accounts and made collections for Alvarez. Records of amounts due between Alvarez and petitioner were kept as an open book account, balances being settled between them about once a month. Petitioner also possessed a power of attorney from Alvarez and was authorized to draw checks against Alvarez' bank account when the latter was absent from the city.

The evidence also showed that, for many years prior to the time of the incidents here set forth, Alvarez had been a close friend and adviser of Mrs. Stubbs, a woman of advanced age; that she had arranged with Alvarez to have charge of her interment, and, in 1935 or 1936, to defray her funeral expenses, she had placed in his keeping a fund for that purpose. However, some time later, Mrs. Stubbs transferred the money from Alvarez to Mrs. Beha. Thereafter, she attempted to recover the money from Mrs. Beha but was unable to do so. In May or June, 1939, Mrs. Stubbs visited Alvarez, who was then ill and who shortly intended to leave on a trip to Australia. There was evidence to show that at the conversation which took place on that occasion Mrs. Stubbs expressed the desire that the fund be recovered and again placed in the keeping of Alvarez. The latter testified that he had been taking care of Mrs. Stubbs and her troubles for years, that "she wanted me to get hold of it [the moneys]"; that on the occasion of her visit it was agreed that when the moneys in question were recovered they were to be again entrusted to Alvarez' care, with the understanding that they were to be used for her funeral expenses, or, in event she needed money for other purposes, she was to be given a certain amount each month; that Mrs. Stubbs asked Alvarez' advice about employing petitioner to secure the money from Mrs. Beha, to which plan he assented, stating "That's what he is for," and "You know he is my attorney and he has power of attorney here to act, to do everything." Thereafter, petitioner was

employed by Mrs. Stubbs to recover the moneys. Some time in July, 1939, after he had settled the claim and received a cashier's check for the said sum of $273, payable to Mrs. Stubbs and himself as her attorney, he took the check to her home. At that time, and in the presence of her nurse, Miss Hayes, petitioner had a conversation with Mrs. Stubbs concerning the settlement and the receipt of the check. The evidence which was given at the hearing before the local examining committee is sharply conflicting as to what was said by the parties on that occasion.

Petitioner testified that when Mrs. Stubbs endorsed the check she told him to deduct the balance of his fee and, after making a statement to the effect that she did not wish to carry an account in the bank, she said to him, ''You turn that over to Alvarez . . . of course I am perfectly satisfied if Mr. Alvarez has that money and if I need a little money I can always get it from Gus''; that immediately thereafter he went to Alvarez' place of business and, as Alvarez was then away, he explained to Charles Byrne, Alvarez' business manager, the directions which Mrs. Stubbs had given him, and tendered the check to Byrne; that Byrne told him that, since the matter was a personal one, he would prefer that petitioner retain the money until Alvarez returned from abroad. Byrne testified to having had the conversation with petitioner as related by the latter, and of his request that petitioner keep the money until Alvarez' return. Petitioner then placed the money in his personal bank account and debited the Alvarez account with that amount. The evidence showed that the said sum was treated as an offset against an obligation of Alvarez to petitioner.

Mrs. Stubbs testified that when petitioner came to her home she endorsed the check, instructed him to have it cashed and, after deducting $30 which was due him as the remainder of his fee, to return to her the balance of $243. Miss Hayes corroborated that testimony, but on cross-examination she stated that during the conversation referred to Mrs. Stubbs had said that she would like to give the money to Alvarez for her funeral expenses; that ''she did not directly tell'' petitioner ''to give it to Mr. Alvarez, but she did say that she would like Mr. Alvarez to have it . . . '' and that Mrs. Stubbs also said ''in case she needed it for doctors or anything like that, she knew she could always call on Mr. Alvarez.''

Mrs. Stubbs further testified that thereafter petitioner failed to return with the money and after a lapse of some time she notified him in writing on two occasions that she was dissatisfied with the way he had handled the transaction and requested that he clear up the matter. On his failure to communicate with her thereafter, she lodged a complaint with the Bar Association.

It also appeared that Alvarez had returned to Los Angeles about the 7th of September, 1939, but due to severe illness he was immediately placed in a hospital, where he remained for over two months. During such period of time business matters were not taken up with him and he did not learn of the trouble between Mrs. Stubbs and petitioner until the latter part of November, when Mrs. Stubbs and Miss Hayes called on him a few days after his release from the hospital and asked him if he had the money formerly held by Mrs. Beha, and informed him of the fact that they had lodged a complaint against petitioner with the Bar Association. Alvarez testified that on learning of that situation he said, "That's all folly" and "we have every confidence" in petitioner; that he told Mrs. Stubbs if she had not yet received her money she would get it; that there was plenty of money "right there in the safe" to repay her now; that petitioner had power of attorney to act for him (Alvarez) and that it would have been all right for him to have written a check from Alvarez' funds, pursuant to such power of attorney, and to have returned the money to Mrs. Stubbs; that she thereupon stated that she did not want the entire sum at that time; and that shortly thereafter an agreement and promissory note for the sum of $243, payable in monthly installments, were drawn up and executed by Mrs. Stubbs and Alvarez. The agreement recited that the moneys collected by petitioner on behalf of Mrs. Stubbs were to be held in trust by Alvarez for the benefit of Mrs. Stubbs, and were to be paid to her by Alvarez in accordance with the terms of the promissory note. The evidence was uncontradicted that petitioner knew nothing of the foregoing conversation or of the execution of the note and agreement until later. When questioned about the making of the note and agreement, Alvarez testified that both documents were executed in accordance with the conversation and understanding he had had with Mrs. Stubbs when she had visited him before he went away. Also, in answer to a query as to the truth of

such statement, Mrs. Stubbs agreed that it was correct, as did also Miss Hayes who, it appeared, had been present on both occasions.

Petitioner admitted he had been informed of Mrs. Stubbs' dissatisfaction, but stated that shortly thereafter he had received a communication from the Bar Association to the effect that she had made a complaint against him and that in view of such fact he had refrained from negotiating with her or from placing himself in the position of having possibly attempted to influence her in testifying before that body; that he therefore decided "to wait until Gus got back and straighten it out," but that when Alvarez returned he did not take the matter up with him because of his serious illness. In view of the fact that a period of less than two months elapsed between the time petitioner collected the money and the date of Alvarez' return, that explanation does not appear to be unreasonable. Petitioner also admitted that after placing the money in his personal bank account he checked out against it for his own use, but he contended that he had been instructed to deliver the money to Alvarez who was not then available, and since he possessed a power of attorney by which he was authorized to act for and on behalf of Alvarez, he had authority to handle the matter as he did, and there was no misappropriation of Mrs. Stubbs' money. He further testified that while Alvarez was away he handled several business matters for Alvarez, for which the latter became indebted to him in a sum greatly exceeding the amount of Mrs. Stubbs' money. Alvarez also testified that at the time of the Beha transaction, as a result of their business relationship, he owed petitioner some money, although he did not know the amount. In response to a query whether petitioner had tendered him any money on his return, Alvarez testified that petitioner had not done so, but that "he telephoned all the time but I was indisposed . . . in the hospital."

As heretofore indicated, the evidence shows conclusively that Alvarez had been taking care of Mrs. Stubbs' affairs for several years before he went to Australia and that at that time it was understood between them that the moneys, if recovered from Mrs. Beha, were to be again placed in Alvarez' keeping—a fact which lends substantial support to petitioner's contention that he was instructed to deliver the money to Alvarez. The record further shows that Alvarez had complete confidence in petitioner and on learning that the latter

had succeeded in recovering the Beha moneys he immediately recognized the obligation to Mrs. Stubbs as his own, and voiced no objection to the fact that after collecting the money and attempting to deliver it to Byrne on his behalf petitioner had offset the amount thereof against a claim which petitioner had or might have against Alvarez. He testified that he was surprised to hear that when petitioner learned of Mrs. Stubbs' dissatisfaction he had not exercised his power of attorney and drawn a check in her favor against Alvarez' funds for the amount involved, and characterized the entire situation as being "all a mistake." Miss Hayes also testified that Mrs. Stubbs had "agreed that there was some misunderstanding some way or other" and that "we never at any time distrusted [petitioner] . . . and never made any statement to that effect.".

Moreover, as has been hereinbefore mentioned, at the hearing before the Board of Bar Governors there was introduced in evidence an affidavit of Mrs. Stubbs to the effect that the arrangement which had been followed with respect to the collection and disposition of the moneys in question was "in accord with her original wishes and understanding as to how the money was to be handled and *in accordance with her instructions to her attorney*," petitioner herein.

Aside from other facts and circumstances which support petitioner's contention that he was not instructed to return the money to Mrs. Stubbs but was in fact directed to turn it over to Alvarez, a direct conflict was raised in Mrs. Stubbs' own testimony by her sworn statement that, in handling the matter as he did, petitioner had followed her instructions. This conflict, together with the statement of Miss Hayes that Mrs. Stubbs had agreed there had been some misunderstanding somewhere, renders of slight value other evidence adduced in support of the charges based on petitioner's failure to carry out his client's instructions, and leaves little else which can be said to seriously challenge the truth of petitioner's statement that he was in fact directed to turn the money over to Alvarez.

On a consideration of all the facts and circumstances hereinbefore set forth, it is our conclusion that the evidence was insufficient to show an intent to misappropriate, or an actual misappropriation of the moneys so collected,—and that petitioner's dereliction, if any, lay not in a violation of his client's instructions but in the method by which they were carried out.

It is true that the Stubbs' money was not an outstanding claim of Alvarez which under the working agreement that existed between Alvarez and petitioner would ordinarily have been entitled to be offset against a claim the latter might have had against Alvarez. However, in the light of the uncontradicted evidence to the effect that at the time petitioner collected the Stubbs' money Alvarez was indebted to him, together with the fact that petitioner possessed full power of attorney to act for and on behalf of Alvarez, even to the extent of withdrawing funds from his personal bank account during his absence, we are of the view that in offsetting the Stubbs' money against Alvarez' indebtedness to him, petitioner's conduct—while not meriting approval as good business practice—did not amount to an act involving moral turpitude, or a violation of the rules of professional conduct of the State Bar of California.

After a review of the entire record, we are of the opinion that the evidence is insufficient to sustain the charges against petitioner, and the proceeding against him is therefore dismissed.